COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | | No. 08-09-00091-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law No. 7 |
| | § | |
| OSCAR RUELAS | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC#20080C05711) |
| | § | |

**O P I N I O N**

The State of Texas appeals the trial court's grant of Appellee's motion to suppress. The State argues the law enforcement officer had sufficient reasonable suspicion to stop and detain Appellee based on evidence established at the suppression hearing.

El Paso Police Officer Jaime Esparza testified that he was patrolling along Paisano Street in the early morning hours of May 2, 2008, when he saw a red vehicle turn left from Santa Fe Street onto the westbound lane of Paisano. The officer stopped the vehicle for failure to signal intent of a lane change and then changing lanes two times. Officer Esparza identified Appellee as the driver of the red car. The officer videoed the stop, but the traffic violations did not appear on the video because he activated it only when he turned on his emergency lights.

The officer testified that as he approached the car, he detected an odor of alcohol coming from within Appellee's vehicle. He also observed that Appellee had "glassy blood shot eyes and a dazed look on his face," as well as slurred mumbled speech. Appellee told Officer Esparza he had three or four drinks. Officer Esparza then asked Appellee to exit the vehicle, at which point

he detected a strong alcoholic odor coming from Appellee's breath and person. After conducting the field sobriety test on Appellee, Officer Esparza observed "6 of 6 clues on the walk and turn test, 5 of 8 on the walk and turn test, and 2 of 4 on the one leg stand test." He also observed Appellee swaying while standing during the HGN test and later vomiting a large amount of liquid. After the incident, Appellee was charged by information with driving while intoxicated.

In December 2008, Appellee filed a motion to suppress on the basis that Officer Esparza arrested and detained him without a warrant, and that the fruits of the arrest should be suppressed. In March 2009, the trial court held a hearing on Appellee's motion to suppress. After the hearing, the court granted Appellee's motion. The court then entered findings of fact and conclusions of law. The court's findings of fact state in part: (1) Officer Esparza observed Appellee's vehicle turn left onto Paisano in the early morning of May 2, 2008; (2) when Appellee turned left onto Paisano, he properly used his left turn signal; (3) Officer Esparza testified he observed two traffic violations that justified the stop; Appellee first entered the left lane on Paisano and then moved into the right lane without signaling, then Appellee moved back into the left lane without signaling intent to change lanes again; (4) in contrast, Appellee testified he simply turned into the right lane and never changed lanes again. The trial court determined Appellee's testimony to be credible based on Appellee's demeanor and his "candor in admitting that he drove through the center [left] lane in order to enter the right lane." Although the State argued that Appellee violated the traffic laws by turning directly into the right lane, the court determined that the police officer failed to testify to this particular violation. Finally, the court concluded that Appellee denied making any improper lane changes, and the court resolved this credibility dispute in favor of Appellee.

-2-

In its sole issue, the State argues the trial court erred by granting Appellee's motion to suppress. The State contends the trial court abused its discretion in granting Appellee's motion to suppress because Officer Esparza had sufficient reasonable suspicion to believe Appellee had committed a traffic violation in his presence, providing him a basis to initiate the traffic stop.

We review a ruling on a motion to suppress using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997); *Newbrough v. State*, 225 S.W.3d 863, 866 (Tex.App.--El Paso 2007, no pet.). While we review *de novo* mixed questions of law and fact that do not depend on credibility or demeanor of witnesses, we review purely factual questions that depend on credibility or demeanor of witnesses for an abuse of discretion. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Guzman*, 955 S.W.2d at 89. We must afford almost total deference to the trial court's determination of issues of historical fact and its application of the law to fact issues that turn on determinations of witnesses' credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). The trial judge is the sole trier of facts and judge of witnesses' credibility, as well as the weight attributed to their testimony, at a suppression hearing. *State v. Hopper*, 842 S.W.2d 817, 819 (Tex.App.--El Paso 1992, no pet.). If the trial court has made fact findings, we do not engage in our own factual review but decide only whether the trial judge's fact findings are supported by the record. *Id*. When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007).

The Fourth Amendment protects against unreasonable searches and seizures. *See* U.S. CONST. AMEND. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that

rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672. A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id*. Once the defendant has made this showing, the State has the burden of proof to establish that the law enforcement officer conducted the search or seizure pursuant to a warrant or that he acted reasonably. *Id*. at 672-73.

A law enforcement officer may lawfully stop a motorist when the officer has probable cause to believe that the motorist has committed a traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000). Under circumstances short of probable cause, an officer may conduct a temporary investigative detention as an exception to the general warrant requirement. *Hopper*, 842 S.W.2d at 820. To determine the reasonableness of an investigative detention, we apply the *Terry* test: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the initial interference. *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). An officer may conduct an investigative detention following a traffic stop for as long as it is reasonably necessary to effectuate the purpose of the stop. *Haas v. State*, 172 S.W.3d 42, 52 (Tex.App.--Waco 2005, pet. ref'd). However, the officer must support the stop with articulable facts, which should amount to more than a mere hunch or suspicion. *Hopper*, 842 S.W.2d at 820. The articulable facts, when combined together with the officer's personal experience and knowledge and any logical influences, must constitute sufficient reasonable suspicion that criminal activity is afoot. *Hopper*, 842 S.W.2d at 820. If an officer does not satisfy this standard, his investigative detention is improper. *See* U.S. CONST. AMEND. IV; *Alonzo v. State*, 251 S.W.3d 203, 207

-4-

(Tex.App.--Austin 2008, pet. ref'd).

The State first argues the record does not support the trial court's finding that Appellee denied making any improper lane changes on the basis that Appellee admitted to an improper lane change by driving through the left lane and ending up in the right lane. Section 545.101(c) of the Texas Transportation Code provides: "On a street or roadway designated for two-way traffic, the operator turning left shall, to the extent practicable, turn in the portion of the intersection to the left of the center of the intersection." TEX.TRANSP.CODE ANN. § 545.101(c) (Vernon 1999). Section 545.101(d) of the Code provides: "To turn left, an operator who is approaching an intersection having a roadway designated for one-way traffic and for which signs are posted from a roadway designated for one-way traffic and for which signs are posted shall make the turn as closely as practicable to the left-hand curb or edge of the roadway."

At the hearing, Officer Esparza testified that Appellee first turned into the left lane and moved into the far right lane without signaling. He testified that Appellee then went from the right lane to the left lane, again without signaling. Officer Esparza testified that both of these lane changes without signaling violated the traffic code.

After Officer Esparza testified, Appellee testified that he made a left turn from Santa Fe onto Paisano, and he remembered putting on his left turn signal when he turned onto Paisano. Appellee initially stated that he went into the right lane with his left turn signal on instead of staying in the left lane. When he was cross-examined, Appellee stated that he passed through the left lane as he turned left and then "ended up in the right lane." He testified he used his left turn signal, but not his right signal, and that he used his turn signals a hundred percent of the time.

Officer Esparza then testified that if a driver turns left, he is required to turn into the first

-5-

or left lane. He testified if that same driver moved into the right lane without signaling, that constitutes a traffic violation. Further, if a driver turned left into the right lane or the outside lane instead of the inside lane, that would also constitute a traffic violation.

The trial court's findings of fact state that Appellee's testimony differentiated from Officer Esparza's because Appellee "testified that he simply turned into the curb [right] lane on Paisano and never again changed lanes." The court expressly determined Appellee's testimony was credible based in part on his demeanor and candor in admitting that he drove through the left lane to enter the right lane. The court concluded by stating that Officer Esparza testified to two improper lane changes while Appellee denied making any improper lane changes, and the court resolved this credibility dispute in favor of Appellee.

Contrary to the State's contention, the record reflects that Appellee did not admit to an improper lane change when he testified about driving through the left lane and ending up in the right lane. Instead, it was Officer Esparza who testified that such conduct was improper under the traffic laws. As such, the record supports the trial court's finding that Appellee denied making any improper lane changes. *See Hopper*, 842 S.W.2d at 819. Although Officer Esparza and Appellee's testimonies differed regarding what occurred on May 2, 2008, the trial judge is the sole judge of witnesses' credibility and the weight attributed to their testimony at a suppression hearing, and we must afford total deference to the court's determination of issues of historical fact. *See Hopper*, 842 S.W.2d at 819; *Amador*, 221 S.W.3d at 673. We defer to the trial court's resolution of the credibility dispute in favoring Appellee's testimony that he turned into the right lane on Paisano and never changed lanes again, as well as his denial of making any improper lane changes. Accordingly, the first part of the State's argument fails.

In the second part of the State's argument, it contends that Appellee testified to making an improper left turn onto Paisano by directly entering into the right lane after making his left turn. The State argues that this particular act violates the traffic code, but the trial court disregarded Appellee's admission by concluding that the evidence should be suppressed because that was not the violation Officer Esparza testified to. The State argues the fact that Officer Esparza did not testify specifically that Appellee entered into the right lane immediately after turning left is irrelevant because our court recognized previously that "an officer's stated reason for the stop is not controlling if there is an objectively reasonable basis for the stop as shown by the evidence."

A law enforcement officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause." *See Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. Reasonable suspicion is an objective standard that disregards any subjective intent of the officer making the detention and looks solely to whether the detention has an objective basis. *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). We look at only those facts known to the officer at the inception of the stop. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441 (1963); *State v. Griffey*, 241 S.W.3d 700, 704 (Tex.App.--Austin 2007, pet. ref'd). An officer's stated reason for the stop is not controlling if there is an objectively reasonable basis for the stop as shown by the evidence. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001). Although the State need not establish with absolute certainty that a crime has occurred to show reasonable suspicion, it is required to elicit testimony of sufficient facts to create a reasonable suspicion that Appellee violated the traffic laws. *See id*.

The preference for objective standards, however, does not apply to the facts on which officers act. *See Swaffar v. State*, 258 S.W.3d 254, 258 (Tex.App.--Fort Worth 2008, pet. ref'd). Generally, law enforcement action can only be supported by facts the officer was actually aware of at the time of that action. *See id*. For example, in *Swaffar*, the court of appeals assumed that the defendant's stop could not be upheld for failing to stop at a stop sign where the officer did not learn of the facts suggesting the defendant did not stop at the stop sign until after the officer had made the stop. *See id*. at 257-58.

Similar to *Swaffar*, in the instant case, it was not until the suppression hearing when the State cross-examined Appellee that the State and Officer Esparza learned of the facts suggesting Appellee turned directly into the right lane after making a left turn and only used his left signal. Subsequent to this testimony by Appellee, Officer Esparza testified that such conduct violates the traffic code. Because law enforcement action can only be supported by facts an officer was actually aware of at the time of that action, and Officer Esparza did not testify to Appellee's act of turning directly into the right lane after turning left onto Paisano, Officer Esparza lacked reasonable suspicion to support the stop of Appellee. *See Swaffer*, 258 S.W.3d at 258. Accordingly, the second part of the State's argument fails, and we overrule Issue One.

We affirm the judgment of the trial court.


October 6, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Publish)

-8-

I concur. I write separately, however, to express my disagreement with the majority's analysis of the State's second argument.

I do not take issue with the trial court's ability to choose to believe Appellee's testimony over that of the officer. Indeed, the law is well-settled that the trial court may choose to believe any or all of the witness testimony presented at a suppression hearing in arriving at the historical facts that form the basis for the alleged stop, search, and seizure. *See Amador v. State*, 275 S.W.3d 872, 878 (Tex.Crim.App. 2009); *Garza v. State*, 213 S.W.3d 338, 346 (Tex.Crim.App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). However, it is equally well-settled that the application of those facts to the law is reviewed *de novo*. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008); *Kothe v. State*, 152 S.W.3d 54, 62-3 (Tex.Crim.App. 2004). It is here that the majority's analysis runs afoul.

The trial court concluded that even if Appellee's testimony demonstrated that he committed a traffic offense, that offense was not testified to by the officer as the reason for stopping Appellee and therefore, it cannot support the basis of the stop. The majority appears to agree with the trial court's statement, citing *Swaffar v. State*, 258 S.W.3d 254, 258 (Tex.App.--Fort Worth 2008, pet. ref'd). However, whether the officer testifies to the specific reason that supports the stop is of no consequence. *See Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 594, 160 L.Ed.2d 537 (2004)(noting that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's

action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action," *quoting Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App. 1992)("It makes little sense to maintain the pretext arrest doctrine solely to deter the subjectively bad intentions of law enforcement personnel when these intentions do not ultimately manifest themselves in any objectively ascertainable Fourth Amendment violations.  Thus, as long as the facts and circumstances show a valid and legal detention, it serves no actual Fourth Amendment function to attempt to unearth the subjective reasons for such detention.").[1]  Indeed, there is a plethora of case law acknowledging that the subjective intent of the officer for stopping an individual is irrelevant.  *Devenpeck*, 543 U.S. at 153, 125 S.Ct. at 593; *Ford v. State,* 158 S.W.3d 488, 492

---

[1] *See, e.g., Williams v. State*, 726 S.W.2d 99, 100-01 (Tex.Crim.App. 1986)(concluding defendant's parking on two-way roadway with left wheels next to curb and right wheels more than eighteen inches from curb in violation of Section 545.303(a)'s predecessor justified stop, despite officer's testimony that he stopped defendant because of suspected drug transaction); *Singleton v. State*, 91 S.W.3d 342, 347-48 (Tex.App.--Texarkana 2002, no pet.)(not limiting review of reasonableness of stop to violations officer cited; though officer testified stop was due to prohibition against "exhibition of acceleration," stop was justified on basis of unsafe driving); *Blount v. State*, 965 S.W.2d 53, 55 (Tex.App.--Houston [1st Dist.] 1998, pet. ref'd)(stop upheld for reckless driving rather than evasion [which was the sole reasons officer testified to] when facts and circumstances known to the officers objectively constitute a lawful basis for arrest); *State v. Salazar*, No. 05-08-01511-CR, 2009 WL 2246133, *2 (Tex.App.--Dallas July 29, 2009, no pet.)(mem. op., not designated for publication)(parking violation did not need to be mentioned in officer's report nor did it need to be officer's primary basis for approaching defendant to supply the justification for the stop); *Love v. State*, No. 07-08-0149-CR, 2009 WL 901022, *3 n.4 (Tex.App.--Amarillo Apr. 3, 2009, no pet.)(mem. op., not designated for publication)("The fact that appellant was initially stopped for jaywalking rather than failure to walk on the sidewalk is not relevant to the inquiry because we review the facts known to the officer from an objective standpoint to determine whether the facts constituted a lawful basis for the stop in question and not based upon the officer's subjective understanding of the law at the point in time of the stop."); *Boyle v. State*, No. 01-01-00405-CR, 2002 WL 1340322, *1, 3 (Tex.App.--Houston [1st Dist.] June 20, 2002, no pet.)(op., not designated for publication)(reasonable suspicion for stop based on traveling in the left lane without passing another vehicle existed despite officer's failure to articulate that reason as the basis of the stop).

(Tex.Crim.App. 2005); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001); *State v. Patterson*, 291 S.W.3d 121, 123 (Tex.App.--Amarillo 2009, no pet.); *Tanner v. State*, 228 S.W.3d 852, 855 (Tex.App.--Austin 2007, no pet.); *State v. Clark*, 315 S.W.3d 561, 564 (Tex.App.--Eastland 2010, no pet.). Rather, it is an objective standard based on the totality of the circumstances as those historical facts – accepted by the fact finder – exist at the inception of the stop. *Doyle v. State*, 265 S.W.3d 28, 31 (Tex.App.--Houston [1st Dist.] 2008, pet. ref'd); *State v. Griffey*, 241 S.W.3d 700, 704 (Tex.App.--Austin 2007, pet. ref'd); *Thomas v. State*, No. 08-05-00247-CR, 2007 WL 1404425, *2 (Tex.App.--El Paso May 10, 2007, pet. ref'd)(op., not designated for publication). And we employ a *de novo* review in determining whether those facts objectively show that the individual is, has been, or soon will be committing a violation such that the stop was lawful. *Castro v. State*, 227 S.W.3d 737, 741 (Tex.Crim.App. 2007); *Ford*, 158 S.W.3d at 492-93; *Garcia*, 43 S.W.3d at 530.

Here, the trial court was certainly free to disregard the officer's testimony on all accounts for the bases supporting the stop. *Garza*, 213 S.W.3d at 346; *Ross*, 32 S.W.3d at 855. However, the trial court, at the same time, chose to believe Appellee. Again, this was within the trial court's prerogative. *Garza*, 213 S.W.3d at 346; *Ross*, 32 S.W.3d at 855. Therefore, if the trial court chooses to accept evidence that supports a violation of the traffic code, even when that evidence is given by the defense rather than articulated by the State's witness, that evidence, when viewed from an objective standard, supports a stop at the time the stop is initiated.[2] *See*

---

[2] In *Swaffar*, the only evidence presented was from the officer. *See Swaffar*, 258 S.W.3d at 257, 260. Nothing in the opinion suggests that the defendant also testified, much less than the videotape was admitted into evidence. Therefore, *Swaffar* is inapposite to the procedural situation presented here.

-11-

*Boyle*, 2002 WL 1340322 at *3 (finding stop justified based on defendant's testimony which admitted to a traffic violation not testified to by officer as the reason for the stop). The trial court, in my opinion, has no discretion to throw out the seized evidence simply because the officer did not testify that he stopped the individual on those same grounds. To hold otherwise would allow a defendant to escape liability for a criminal offense that he confessed to simply because, as in this case, the trial court sought to reward the defendant's candor and punish the officer for failing to articulate that basis in his testimony. But rewarding a defendant's candor is a punishment issue; it is not a tool that can be employed to absolve a defendant from liability for the charged criminal offense when the facts supporting the criminal activity are not only before the court, but believed by it, as well.

The test, as noted above, is whether the totality of the accepted evidence, viewed from an objective standpoint, supports the stop. *Ford*, 158 S.W.3d at 492. Therefore, the question presented is whether Appellee's testimony, as believed by the trial court, supported a traffic offense. It does not. The State argues that Appellee admitted to committing a traffic violation by turning left into the curb lane rather than the left lane. However, the State cites no statute, rule, or case law proscribing such conduct, and I have been unable to find one. Rather, the statute at issue simply provides that a left-turning motorist may turn into "*a* lane lawfully available to traffic moving in the direction of the vehicle on the roadway being entered." *See* Tex.Transp.Code Ann. § 545.101(b)(2)(Vernon 1999)[Emphasis added]. According to the testimony believed by the trial court, Appellee did so. Because Appellee's own testimony does not demonstrate that he committed a traffic offense, the officer lacked authority to stop Appellee.

With these comments, I concur.

October 6, 2010

GUADALUPE RIVERA, Justice