

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-11-00375-CR

THE STATE OF TEXAS                                                    STATE

V.

LINDSEY NICHOLE HOUGHTON                                          APPELLEE

----------

FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

----------

## OPINION

----------

### I. Introduction

The State appeals from the trial court's written order granting Appellee Lindsey Nichole Houghton's motion to suppress evidence. The State argues in two points that the trial court erred by granting Houghton's motion to suppress because reasonable suspicion supported the traffic stop of Houghton's vehicle. Houghton has not filed a brief on appeal. We affirm.

## II. Background

Houghton was charged with driving while intoxicated and filed a written motion to suppress. Officer Mark Epps was the only witness who testified at the suppression hearing. The State and Houghton stipulated that the scope of the hearing was the validity of the traffic stop. The trial court also watched the video recording from Officer Epps's in-car camera.

Officer Epps testified that he has been a certified peace officer with the University of Texas at Arlington Police Department since December 2008 and that he had undergone "special training pertaining to DWI investigations" and "detecting signs that a person's intoxicated." He did not otherwise explain the nature of his training.

Officer Epps testified that he worked the third shift on January 15, 2011, that he was in uniform and in a marked patrol unit, and that there are known drinking establishments in the area. Officer Epps testified that he was conducting radar enforcement and sitting stationary in his vehicle when he first noticed Houghton's vehicle. He could not remember what drew his attention to Houghton's vehicle but testified, "[I]t was probably just going to be excessive speed over 35. I can't remember." He also testified that he observed Houghton's vehicle "weaving from the left to right within the lane."[1]

---

[1]This portion of Officer Epps's observation of Houghton's vehicle is not reflected on the video recording.

Officer Epps testified that he began following Houghton's vehicle and that he saw her "swerving." He also stated, "The defendant, she was driving a silver Ford Mustang. When I got behind the vehicle, it immensely slowed its speed. Then I observed the vehicle swerving from left to right and then it drove left of center in about the 300 block of South Cooper Street."

After the trial court admitted Officer Epps's in-car video recording, which reflects that he stopped Houghton at 3:16 a.m., Officer Epps described what was depicted on the video as follows: "[T]he vehicle, when it came through the 300 block of South Cooper Street, it drove left of the center line, the yellow line, and it failed to make a left turn, and it came back into the lane closest to the center while driving northbound." Officer Epps further testified that weaving can indicate impairment and that "[g]iven the time of night and the -- the vehicle slowing down and swerving before, it usually, in my opinion, indicates intoxication." Officer Epps agreed in response to questioning by the prosecutor that a vehicle weaving on a street after 2:00 a.m. on Saturday morning can be evidence of impairment.

On cross-examination, Officer Epps testified that he did not see Houghton leaving any bar on Cooper Street and that he could not recall how far Houghton's vehicle was from his location when he first observed it. Officer Epps agreed that Houghton's vehicle had remained within its lane when he saw it weaving before he turned on his recording device. He explained that "it was because she drove left of center which is what gave me probable cause to pull the vehicle over," but

3

he also stated that the tire of Houghton's vehicle touched but did not cross the center line. This exchange followed:

> Q. Okay. And it touched the line, and about how far of a distance did you follow the defendant's vehicle, would you estimate?

> A. Approximately, six blocks.

> Q. Okay. And you're saying that her tire touched the line one time in six blocks and you believe that gave you reasonable suspicion to make the stop?

> A. Yes, sir.

The State then questioned Officer Epps as follows:

> Q. Officer Epps, I just want to clarify. Can you tell us what -- can you tell us what circumstances you took into consideration when you made the decision to pull the defendant over?

> A. Yes. It was the -- on the day, the time of night, and Cooper Street is generally known for having vehicles using it as a means to get home quickly. Usually, my experience is for people who are intoxicated at that time of night, will do -- who move within their lanes or within a lane and then cross left of center and drive on the other side of the road.

> Q. So did you take the totality of the circumstances into consideration that the defendant could possibly be impaired?

> A. Yes, ma'am.

The trial court granted Houghton's motion to suppress at the conclusion of the hearing. The trial court also denied the State's motion to reconsider but granted the State's requests for findings of fact and conclusions of law and for "specific findings" and "conclusions addressing evidence." The trial court's first set of factual findings largely recite Officer Epps's testimony and we thus do not

4

repeat them here.[2]  The trial court's conclusions of law, which include a

determination that Officer Epps's testimony was not credible, are as follows:

> 1.  The initial observation of the defendant's vehicle on South Cooper Street did not involve a traffic violation, insofar as the officer stated he could not remember if the defendant's vehicle was speeding.
>
> 2.  The detention of the vehicle by the officer based on the testimony elicited, and the DVD evidence presented was not based on reasonable suspicion or probable cause, as the court did not find the officer's testimony to be credible, based on his lack of memory of the incident, and his poor skill at recounting the event.  The testimony of the officer was more an agreement with the prosecutor, rather than the officer stating in his own words that he reached the conclusions arriving at reasonable suspicion or probable cause that served as the basis for the stop himself, supported by his own observations.
>
> 3.  The defendant was under temporary detention at the time the vehicle was stopped and she was approached by Officer Epps.
>
> 4.  The temporary detention was not lawful, as it was not subsequent to a lawful traffic stop.
>
> 5.  Any evidence obtained subsequent to the unlawful detention should be suppressed.

The trial court also made additional findings, indicating on an order

prepared by the State that it made the following additional findings of fact:[3]

---

[2]The trial court did include one finding of fact concerning the prosecutor's and officer's preparedness for the hearing on the motion to suppress, but that fact finding is not material to the disposition of this appeal and we do not address it.

[3]These additional findings are not consecutively numbered because the trial court did not adopt each of the State's proposed additional findings.

a. Based upon the trial court's previous finding regarding Officer Epps' credibility, the trial court specifically disbelieved all of the testimony of the officer.

e. The court further specifies that the State's evidence showed that the temporary detention of Defendant Houghton's vehicle was not supported by reasonable suspicion or probable cause because the officer's testimony was wholly incredible.

f. The court further specifies that the State's evidence showed that the temporary detention of Defendant Houghton's vehicle was not supported by reasonable suspicion or probable cause because the officer's testimony was incredible pertaining to Defendant Houghton's driving behavior.

g. The court further specifies that the State's evidence showed that the temporary detention of Defendant Houghton's vehicle was not supported by reasonable suspicion or probable cause because the officer's testimony regarding the reasons for stopping Defendant Houghton's vehicle were not credible.

h. The court further specifies that the State's evidence showed that the temporary detention of Defendant Houghton's vehicle was not supported by reasonable suspicion or probable cause because the officer's testimony was not credible with respect to any possible speeding violation.

### III. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial

6

judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact

7

findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

The State argues that we are not required in this case to give almost total deference to the trial court's factual determinations because witness credibility and demeanor are not at issue with the video recording and because the video recording contradicts the trial court's factual determinations. The court of criminal appeals has held, however, that "a trial court's determination of historical facts based on a videotape recording is still reviewed under a deferential standard." *Carter v. State*, 309 S.W.3d 31, 40 (Tex. Crim. App. 2010); *Montanez*, 195 S.W.3d at 109; *see also State v. Gobert*, 275 S.W.3d 888, 891–92 & n.13 (Tex. Crim. App. 2009). *Cf. Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (noting bifurcated standard of review that requires "almost total deference to a trial court's determination of the historical facts that the record supports" but declining to give that level of deference in that case because "the videotape present[ed] indisputable visual evidence contradicting essential portions of [the officer's] testimony"). We thus give almost total deference to the trial court's factual determinations unless the video recording indisputably contradicts the trial court's findings. *Compare Carter*, 309 S.W.3d at 40, *with Carmouche*, 10 S.W.3d at 332.

## IV. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at

24.  To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.  *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009).  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.  *Amador*, 221 S.W.3d at 672.  Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.  *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A law enforcement officer may lawfully stop a motorist when the officer has probable cause to believe that the motorist has committed a traffic violation.  *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000).  However, a police officer may also lawfully stop a motorist when, based on the totality of the circumstances, he has reasonable suspicion for a temporary investigation on less than probable cause if the officer has specific articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person is, has been, or soon may be engaged in criminal activity.  *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App.), *cert. denied*, 132 S. Ct. 150 (2011) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)); *Carmouche*, 10 S.W.3d at 328.  "Reasonable suspicion" is an objective

9

standard that disregards any subjective intent or motivation of the officer making the stop and looks solely to whether an objective basis for the stop exists.[4] *Ford*, 158 S.W.3d at 492; *see Derichsweiler*, 348 S.W.3d at 914. To satisfy the standard of reasonable suspicion, the articulable facts need not lead inexorably to a conclusion that a particular penal code offense is imminent. *Derichsweiler*, 348 S.W.3d at 916–17. It is enough to satisfy the standard that the information is sufficiently detailed and reliable to support more than an "inarticulate hunch" that something of an apparently criminal nature is brewing. *Id.* at 917.

## V. Discussion

The State contends in its two points that the trial court's legal conclusion concerning the lack of reasonable suspicion is erroneous and that the trial court's factual determinations constitute an abuse of discretion because they contradict the "objective" evidence shown on Officer Epps's in-car video recording. Specifically, the State argues that the video recording shows two traffic violations as well as other erratic driving.[5]

---

[4]"Reasonable suspicion" examines whether there was an objective justification for the detention. *State v. Elias,* 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). The subjective intent or motive of the detaining officer is disregarded in this analysis. *Id.*; *see also Wiede*, 214 S.W.3d at 25 (in considering legitimacy of detention, "[t]he subjective intent or motivations of law enforcement officials is not taken into account").

[5]The State uses the term "objective" with reference to the facts shown by the video twenty-four times in its brief, confusing the requirement of articulable facts upon which an officer relied in determining that a traffic stop was justified with the objective standard the court must apply of whether a reasonable officer would have relied upon those facts in making the stop. It is the standard for

We first consider the State's contentions concerning traffic code violations. *See Walter*, 28 S.W.3d at 542 (holding that a law enforcement officer may lawfully stop a motorist when the officer has probable cause to believe that the motorist has committed a traffic violation); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (holding that an officer may lawfully stop and reasonably detain a person for a traffic violation). The State asserts that the video recording shows that Houghton violated transportation code section 545.060. The State does not, however, clarify whether it relies on section 545.060(a) or (b), explain how Houghton allegedly violated section 545.060, or cite any authority that would compel the conclusion that Houghton violated section 545.060. Even so, given Officer Epps's testimony, we presume that the State relies on section 545.060(a), which provides that "[a]n operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane *unless that movement can be made safely*." Tex. Transp. Code Ann. § 545.060(a) (West 2011) (emphasis added); *see Fowler v. State*, 266 S.W.3d 498, 502, 504 (Tex. App.—Fort Worth 2008, pet. ref'd) (en banc) (summarizing section 545.060(a) as prohibiting movement "out of a marked lane when it is not safe to do so").

---

determining reasonableness that is "objective," not the facts testified to by the officer, as discussed below. Likewise, the State is mistaken in arguing that this Court is not bound by the trial court's findings that contradict the "historical facts" shown by the video. The relevant "historical facts" relied upon by the officer in making the stop are not those in the video, which he did not review until long after the stop but those which he testified he relied upon in making the stop.

11

Our review of the video recording confirms that the left-side tires of Houghton's vehicle briefly touched but did not cross the double-yellow line approximately forty-two seconds after the recording began. The State, however, presented no evidence at the suppression hearing that this maneuver was performed in an unsafe manner. Officer Epps testified only that Houghton's vehicle "drove left of the center line, the yellow line, and it failed to make a left turn, and it came back into the lane closest to the center while driving northbound." He did not elaborate as to any articulable facts that he observed that would support a finding that Houghton made the maneuver in an unsafe manner. *See Ford*, 158 S.W.3d at 493 (holding officer's conclusory testimony that motorist was following too closely failed to present specific, articulable facts to support traffic violation of "following too closely"); *Fowler*, 266 S.W.3d at 504 (addressing section 545.060(a) and holding that absent any testimony by officer of busy traffic or other factors indicating unsafe maneuver such as crossing over into oncoming traffic, there was no evidence that the "failure to drive in a single lane was unsafe"). The video recording likewise does not "indisputably" show that Houghton's vehicle failed to maintain a single lane in an unsafe manner, unlike the video in *Carmouche*, in which the court of criminal appeals declined to defer to the trial court's determination of historical facts where "indisputable visual evidence" shown in the video contradicted the officer's testimony. *See* 10 S.W.3d at 332. One other car appears on the video near the time Houghton's vehicle touched the double-yellow line, but that car does not appear to have been

12

in proximity to Houghton's vehicle. Without explanation from Officer Epps as to observations by him as to why Houghton's maneuver was unsafe (and thus in violation of transportation code section 545.060(a)), we cannot say that the stop of Houghton's vehicle was justified solely based on an alleged violation of section 545.060. *See Ford*, 158 S.W.3d at 493; *Fowler*, 266 S.W.3d at 504 (noting absence of evidence that traffic maneuver was performed in unsafe manner and stating that "[a]n officer's reasonable suspicion of an alleged traffic violation cannot be based on a mistaken understanding of traffic laws.").

The State also argues that the video recording shows a violation of transportation code section 544.004 because Houghton drove her vehicle "across the lined demarcation for a designated left-turn lane." First, the State did not raise this section 544.004 argument until its motion for reconsideration. Nothing in the record suggests that Officer Epps observed before the traffic stop that Houghton allegedly violated section 544.004 by crossing the white line separating the left-turn lane from the regular lane of traffic. Officer Epps did not mention it during any portion of his testimony, nor did the State question Officer Epps about the movement into the left-turn lane during the suppression hearing. Moreover, the State did not argue at the suppression hearing that the movement into the left-turn lane constituted a traffic violation that gave Officer Epps either probable cause or reasonable suspicion to stop Houghton's vehicle or even that crossing the white line was one of the articulable facts relied upon by the officer that the trial court should consider as part of the totality of the circumstances.

13

In a very similar case that also involved a video recording of the events leading to the stop of a defendant's vehicle, our sister court recently held that because the officer "was not consciously aware of any signaling violation" at the time of the stop, the court could not include the alleged traffic violation as "part of the objective calculus" it considered for determining whether reasonable suspicion supported the traffic stop. *State v. Smith*, Nos. 05-11-00742-CR, 05-11-00743-CR, 2012 WL 1059703, at *4–5 (Tex. App.—Dallas Mar. 30, 2012, pet. ref'd) (not designated for publication) (affirming order granting motion to suppress). In *Smith*, the State even questioned the officer about the alleged signaling violation during the suppression hearing. *Id.* Here, neither the State nor Officer Epps mentioned or alluded to an alleged violation of section 544.004 at any time during the hearing. Thus, we will not consider the *post hoc* argument of the State regarding the alleged violation of section 544.004 as an independent basis to support the stop of Houghton's vehicle nor even as a factor to consider as part of the totality of the circumstances establishing reasonable suspicion as the basis for the stop.

To establish reasonable suspicion, the state must show that, *at the time of the detention*, the officer had specific, articulable facts that established reasonable suspicion. *Terry*, 392 U.S. at 21–22, 88 S. Ct. 1868, 1880 (holding that in justifying the particular intrusion, "the facts [must] be judged against an objective standard: would the facts available to the officer *at the moment of the seizure or the search* 'warrant a man of reasonable caution in the belief' that the

14

action taken was appropriate?" (emphasis added)); *Martinez v. State*, 348 S.W.3d 919, 924 (Tex. Crim. App. 2011) (holding anonymous tip that provided no identification to dispatch, was not shown to have maintained contact with dispatch, did not follow suspect vehicle, was not present at scene before the stop, and arrived at scene and provided officer with identifying information only after the stop, was not sufficient, stating "the reasonableness of official suspicion must be measured by what the officers knew before they conducted their search; *reasonable suspicion cannot be obtained retroactively*." (emphasis added) (citations omitted)); *St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007) (noting holding in *Terry* that "an officer's actions [in effecting a detention] must be justified at its inception" and holding passenger's providing of a false name when officers did not know it was false could not give them reasonable suspicion to investigate further when driver had already been issued a warning citation and purpose for stop had ended).

Generally, law enforcement action can only be supported by facts the officer was "actually aware of at the time of that action." *State v. Ruelas*, 327 S.W.3d 321, 326–27 (Tex. App.—El Paso 2010, pet. ref'd). As stated by the court in *Ruelas*, "The preference for objective standards, however, does not apply to the facts on which officers act." *Id*. at 326 (holding officer lacked reasonable suspicion where it was not until suppression hearing when state was questioning motorist defendant that officer learned of facts suggesting he violated traffic code by making left turn into right-hand lane); *Swaffar v. State*, 258 S.W.3d

15

254, 258 (Tex. App.—Fort Worth 2008, pet. ref'd) (declining to consider stop sign violation in determining whether reasonable suspicion supported traffic stop because officer first learned of facts suggesting violation upon later reviewing in-car videotape); *State v. Griffey*, 241 S.W.3d 700, 703–04 (Tex. App.—Austin 2007, pet. ref'd) (holding reasonableness of detention determined in terms of totality of circumstances "at its inception" and court looks "only at those facts known to the officer at the inception of the stop"); *see also United States v. Lewis*, 672 F.3d 232, 237–38 (3d Cir. 2012) (stating that "*ex post facto* justifications are impermissible" and holding that government could not rely on defendant's illegal window-tinting in absence of evidence that defendant was stopped for illegal window tint); *see generally Florida v. J.L.*, 529 U.S. 266, 271, 120 S. Ct. 1375, 1379 (2000) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.").[6]

---

[6] *See also United States v. Brewer*, 561 F.3d 676, 677–78 (7th Cir. 2009) (stop of vehicle could not be justified by information obtained post-stop that shots had been fired earlier from that vehicle); *United States v. Simmons*, 560 F.3d 98, 107 (2d Cir. 2009) (holding grounds for seizure must exist at the time of the stop); *United States v. Wright*, 485 F.3d 45, 51 (1st Cir. 2007) (holding court must determine whether officer had reasonable suspicion at the time he began the stop); *Laime v. State*, 347 Ark. 142, 157, 60 S.W.3d 464, 474 (2001) (holding after-acquired knowledge by officer irrelevant; "only what the police officer knew at the time of [the stop]" may be considered); *Baptiste v. State*, 995 So.2d 285, 295–96 (Fla. 2008) (holding officers must possess reasonable suspicion "*at the time*" of a seizure); *State v. Joyce*, 159 N.H. 440, 446–47, 986 A.2d 642, 648 (2009) (no reasonable suspicion based on information acquired by police after seizure).

Additionally, the video recording does not "indisputably" show a violation of transportation code section 544.004, as contended by the State on appeal. That section requires an operator to comply with "applicable official traffic-control device[s]." Tex. Transp. Code Ann. § 544.004 (West 2011). The video reflects that, although Houghton's vehicle crossed the solid white stripe that marks the right boundary of the left-turn lane, Houghton signaled a lane change, moved her vehicle into the left-turn lane, and waited for an approaching car to clear the intersection before turning left. This case is thus distinguishable from *Kortemier v. Texas Department of Public Safety*, No. 05-08-01182-CV, 2009 WL 1959256, at *3 (Tex. App.—Dallas July 9, 2009, no pet.) (mem. op.), in which the court observed that the defendant violated section 544.004 "by failing to turn right from a right-turn-only lane marked by a solid white stripe." Here, Houghton signaled her intention to turn and turned left from the left-turn lane. Even assuming that the solid white stripe is "a traffic control device within the meaning of section 544.004, the State cites no authority that defines [its] purpose or what constitutes a failure to comply with [it]." *State v. Palmer*, No. 02-03-00526-CR, 2005 WL 555281, at *3–4 (Tex. App.—Fort Worth Mar. 10, 2005, pet. dism'd) (mem. op., not designated for publication) (addressing alleged violation of section 544.004 as shown by video evidence and holding no reasonable suspicion of section 544.004 violation by touching tire to a portion of double-white lines). The State has therefore failed to establish that Houghton's crossing the solid white stripe as part of her movement into the left-turn lane provided Officer Epps with

17

reasonable suspicion or probable cause that would have justified his stop of Houghton's vehicle.

Because the video recording does not clearly show that Houghton committed a traffic violation, we next consider whether sufficient specific, articulable facts justified the stop of Houghton's vehicle. The video recording reflects that Officer Epps initiated his in-car recording device at 3:14 a.m. and followed Houghton's vehicle for approximately one minute and forty seconds before turning on his overhead lights. As the recording begins, Officer Epps drove his vehicle forward and turned right onto Cooper Street. Officer Epps accelerated toward Houghton's vehicle and began following her. Forty-two seconds into the recording, the left-side tires of Houghton's vehicle touched the double-yellow center-stripe, but the vehicle moved slowly back to the middle of the left-hand lane; the movement away from the center stripe was not jerky or fast. After another approximately fifteen seconds, Houghton signaled a left-hand turn and moved her vehicle into the separately-marked left-hand turn lane. Houghton's vehicle came to an almost complete stop at the intersection (the light was green) as she waited for an oncoming vehicle to exit the intersection. Her vehicle then turned left onto the cross-street. Officer Epps followed Houghton for another approximately twenty seconds before initiating his overhead lights. Contrary to Officer Epps's testimony, Houghton's vehicle did not obviously weave within its lane, other than when the tires touched the center lane on one occasion.

The facts of this case are similar to two others in which reviewing courts affirmed the trial court's grant of the defendant's motion to suppress. *See State v. Hanrahan*, No. 10-11-00155-CR, 2012 WL 503658, at *1 (Tex. App.—Waco Feb. 15, 2012, no pet.) (mem. op., not designated for publication); *State v. Rothrock*, No. 03-09-00491-CR, 2010 WL 3064303, at *1 (Tex. App.—Austin Aug. 5, 2010, no pet.) (mem. op., not designated for publication). In *Rothrock*, the officer stopped Rothrock after seeing "Rothrock leaving a bar at 2:30 a.m., accompanied by a large cloud of dust" and observing Rothrock "weave within his lane and briefly cross over the left fog line." 2010 WL 3064303, at *1. The court noted that the video evidence did not resolve the dispute concerning the alleged traffic violation (impermissibly driving on an improved shoulder) and held that the video therefore did not support a conclusion that the officer had reasonable suspicion of a traffic violation. *Id.* at *3. The court further held that the State, by pointing to evidence that Rothrock left a bar at 2:30 a.m., caused a cloud of dust as he drove away, weaved within the lane, and briefly crossed the fog line, did not carry its appellate burden of showing that the trial court abused its discretion by granting Rothrock's motion to suppress. *Id.* at *2.

In *Hanrahan*, the officer saw Hanrahan driving at 1:00 a.m. and noticed that her vehicle swerved from side to side within its lane before crossing the fog line that marked the improved shoulder. 2012 WL 503658, at *1. The officer testified at the suppression hearing that crossing the fog line was a traffic violation. *Id.* Affirming the trial court's grant of Hanrahan's motion to suppress,

19

the court stated that the officer was unable to clearly explain how Hanrahan crossed the fog line and that the video "failed to clearly show a [traffic] violation." *Id.* at *5. The court then stated,

> While in some instances an officer's observation of a violation of the transportation code unequivocally establishes a violation of the law justifying a traffic stop, in this case, the trial court was able to not only consider the testimony of Officer Bell, but it also was able to consider the video recording of the incident. And in granting appellee's motion to suppress, the trial court clearly did not believe the testimony of Officer Bell, and it did not believe that the videotape conclusively demonstrated a violation of the transportation code. Essentially, the determination of whether Officer Bell had reasonable suspicion to stop appellee turned on the trial court's evaluation of Officer Bell's credibility and an evaluation of the video recording within the context of Officer Bell's testimony. In such instances, we afford "almost total deference" to the trial court's conclusions. Furthermore, because the trial court entered fact findings stating that it did not believe that a traffic violation occurred, we must review the fact findings in a light most favorable to the trial court's ruling.

*Id.* (citations omitted).

Applying the appropriate standard of review and giving almost total deference to the trial court's factual determinations where appropriate, we hold that the State has not demonstrated that the trial court erred by granting Houghton's motion to suppress. The record, viewed in the light most favorable to the trial court's ruling, does not reflect sufficient specific, articulable facts that when combined with rational inferences from those facts, would have led Officer Epps to reasonably conclude that Houghton was, had been, or soon would be

20

engaged in criminal activity.  We therefore overrule the State's first and second points.[7]

## VI.  Conclusion

Having overruled each of the State's points, we affirm the trial court's order.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

LIVINGSTON, C.J., concurs without opinion.

PUBLISH

DELIVERED:  October 25, 2012

---

[7]The State's amended brief includes a request for abatement and limited remand for precise factual findings concerning the alleged traffic violations discussed above.  *See State v. Mendoza*, 365 S.W.3d 666, 672–73 (Tex. Crim. App. 2012).  Without addressing the propriety of adding this additional request for relief without first obtaining this court's permission, *see* Tex. R. App. P. 38.7, we decline to abate for additional findings of fact.  We do not find the type of inconsistency within the trial court's findings that were present in *Mendoza*, and we note that the State presented the trial court with eleven proposed "Specific Findings and Conclusions," some of which were adopted by the trial court.  None of those proposed additional findings addressed the alleged traffic violations upon which the State focuses on appeal and for which the State now requests abatement.