

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00249-CR

_____

JASON ROBERT ADAMS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1831051

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Appellant Jason Robert Adams's three felony convictions all stem from a single traffic stop—a traffic stop he claims should not have been made. Adams admits that he failed to maintain a single lane while driving, but he asserts that his "inadvertent" lane departure was not a traffic offense because it did not present a safety risk. *See* Tex. Transp. Code Ann. § 545.060(a). Therefore, Adams reasons, the officer who pulled him over lacked reasonable suspicion, and the trial court should have suppressed the fruit of the stop—including the methamphetamine, fentanyl, and firearms found in his vehicle.[1] *See* Tex. Health & Safety Code Ann. §§ 481.112(f), .1123(d); Tex. Penal Code Ann. § 46.04(a).

We disagree. Because the record shows specific articulable facts from which the officer could have reasonably concluded that Adams's departure from his lane was unsafe, we will overrule Adams's sole appellate issue and affirm his convictions.[2]

---

[1]Adams was convicted of (1) possession with the intent to deliver 400 grams or more of methamphetamine; (2) possession with the intent to deliver 4 grams or more but less than 200 grams of fentanyl; and (3) unlawful possession of a firearm by a felon. *See* Tex. Health & Safety Code Ann. §§ 481.112(f), .1123(d); Tex. Penal Code Ann. § 46.04(a). His punishment range was enhanced based on his status as a habitual offender, and he was sentenced to 45 years' confinement for each offense, to run concurrently. *See* Tex. Penal Code Ann. § 12.42.

[2]The State advanced a second, alternative justification for the traffic stop as well: the officer's suspicion that Adams was driving while intoxicated—a suspicion based in large part on Adams's failure to stay within his lane. Because we affirm on the State's primary argument, we need not address this alternative argument. *See* Tex. R. App. P. 47.1.

## I. Governing Law

A warrantless traffic stop is analogous to a temporary detention, and like all Fourth Amendment seizures, it must be justified by reasonable suspicion. *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022); *see* U.S. Const. amend. IV. Reasonable suspicion exists if the officer "has specific articulable facts that, combined with rational inferences from those facts," lead the officer to reasonably conclude that the defendant has committed a traffic offense. *Hardin*, 664 S.W.3d at 871–72 (noting that reasonable suspicion is based on the totality of the circumstances). "An actual violation does not need to have occurred; rather, it is only necessary that the officer had a reasonable suspicion that a violation occurred." *White v. State*, No. 01-23-00041-CR, 2025 WL 309726, at *14 (Tex. App.—Houston [1st Dist.] Jan. 28, 2025, no pet.) (mem. op., not designated for publication) (reviewing challenge to denial of suppression motion); *see Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) ("The question in this case is not whether appellant was guilty of the traffic offense but whether the trooper had a reasonable suspicion that she was."); *Kendrick v. State*, No. 01-22-00419-CR, 2024 WL 924513, at *3 (Tex. App.—Houston [1st Dist.] Mar. 5, 2024, pet. ref'd) (mem. op., not designated for publication) ("To justify the stop, it is sufficient [to] show that the officer reasonably believed that a traffic violation was in progress.").

As relevant here, a person commits a traffic offense if, while driving on a multi-lane roadway, the person fails to "drive as nearly as practical entirely within a single

3

lane" and his "move[ment] from the lane" is unsafe. Tex. Transp. Code Ann. § 545.060(a); *see Hardin*, 664 S.W.3d at 875 (explaining that "incidental movement outside a single lane will not run afoul of the statute, but unsafe movement will").

## II. Standard of Review

When a defendant moves to suppress the fruit of a traffic stop based on an alleged lack of reasonable suspicion, we apply a bifurcated standard of review to the trial court's ruling. *Hardin*, 664 S.W.3d at 871–72. We consider legal questions de novo but give "almost total deference" to the trial court's evaluation of historical facts and witness credibility. *Id.*; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (noting that "the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony"); *see State v. Houghton*, 384 S.W.3d 441, 446 (Tex. App.—Fort Worth 2012, no pet.) (clarifying that deferential standard applies even if there is video evidence "unless the video recording indisputably contradicts the trial court's findings"). If, as here, the trial court does not enter findings of fact on the suppression issue, then we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit supportive findings as long as those findings are consistent with the record. *Ross*, 32 S.W.3d at 855–56.

## III. Reasonable Suspicion for Adams's Traffic Stop

In his sole appellate issue, Adams challenges the denial of his motion to suppress, arguing that the officer who pulled him over lacked reasonable suspicion.

4

Adams compares his traffic stop to that in *Hardin*, asserting that, just as the Court of Criminal Appeals held that Hardin's departure from her lane did not justify her traffic stop absent evidence that the departure was unsafe, Adams's incidental departure from his lane did not justify his stop either. *See generally Hardin*, 664 S.W.3d at 873–78. But this case differs from *Hardin* in two significant ways.[3]

First, in *Hardin*, the State did not argue that the defendant's departure from her lane was unsafe. Rather, it argued that "the failure to maintain a single lane is a traffic violation, regardless of whether or not it was safe to do so, and that violation provided reasonable suspicion for the traffic stop." *Id.* at 871. The case thus turned on a matter of statutory construction, namely, what the elements of the traffic offense required. *Id.* at 872 (noting that case "turn[ed] on the application of a traffic statute to uncontested facts" and that, "[t]o resolve the dispute in this case, we must first construe [the statute]"). Here, statutory construction is a non-issue—there is no dispute that "[i]t is only when the failure to stay 'as nearly as practical' entirely with[in] a single lane becomes unsafe that a motorist violates the statute." *Id.* at 874. Instead, the pivotal dispute is whether the officer had a reasonable suspicion that Adams's departure from his lane was unsafe.

---

[3]*Hardin* also differs from this case in that, there, the trial court granted Hardin's motion to suppress, and here, the trial court denied Adams's motion. *Hardin*, 664 S.W.3d at 871–72. Generally, these differing trial court rulings result in significantly different views of the record on appeal, as the appellate court gives almost total deference to the trial court's evaluation of historical facts. *See id.* However, the dispositive facts were undisputed in *Hardin*. *See id.* at 870.

And that brings us to the second distinguishing aspect of *Hardin*—and the most decisive one for purposes of this appeal. In *Hardin*, the undisputed facts established that the defendant was driving a large U-Haul truck, that a single tire of the U-Haul strayed from the lane "briefly," that "there were no other vehicles in the vicinity at the time," and that the defendant did not "even come close to hitting anything." *Id.* at 870–71, 876. Here, the officer who stopped Adams testified that

- Adams was driving a standard sedan (a "black Honda Accord")—not a moving truck; Adams crossed into the neighboring righthand lane not once but twice;

- In Adams's second departure from his lane, he remained partially in the neighboring lane for a full "[f]ive seconds";

- There were multiple vehicles in Adams's vicinity at the time—two in the righthand lane he strayed into and one in the center turn lane on his left—as well as "a lot of traffic entering and exiting the roadway" from the adjacent businesses; and

- When Adams's vehicle first drifted into the neighboring lane, "th[e] vehicle that [wa]s just ahead of [the officer's vehicle, but behind Adams's] in that outer lane [wa]s applying its brakes," which the officer attributed to the motorist's "concern[] about [Adams's] lane change."

Adams's lane departure was thus markedly different from that in *Hardin*. And the officer who pulled Adams over explained that, "with . . . such a distinct exit of [Adams's] lane into the next lane with other vehicles around us, that [wa]s a safety concern" for other drivers.

Yet, Adams dismisses this testimony as "bare" and "conclusory." He emphasizes that the officer failed to quantify how many other cars were on the road,

to estimate how close those cars were, or to specify what direction the other cars were traveling. But the officer's dash-camera video recording, which was admitted into evidence at the suppression hearing, answered many of those questions. Not only did the video corroborate the officer's description of events, but it was also referenced throughout the officer's testimony, with him pointing out the relevant aspects as he discussed them. The officer's failure to relate every minute detail of the video did not render his testimony conclusory.

Nor, as Adams contends, was the officer's testimony rendered conclusory by his failing to enunciate why Adams's straying into a lane occupied by multiple other vehicles—two of which were videotaped within a stone's throw of Adams's vehicle at times—presented a safety concern. This characterization was a logical extension of the surrounding conditions the officer had already described, and even if he had not testified to the safety concern expressly, the trial court would have been permitted to draw the same inference from the video and facts presented. *Cf. Nichols v. State*, 877 S.W.2d 494, 498 (Tex. App.—Fort Worth 1994, pet. ref'd) (stating rule that, while affidavit supporting search warrant must state facts showing probable cause, "[a] warrant is not invalid merely because the officer failed to state the obvious" in the affidavit; and concluding that trial court could have inferred location of seized box even though such location was not expressly stated in affidavit).

In short, the testimony and video, viewed in light of the trial court's implied credibility determinations, demonstrate that the officer who pulled Adams over had

specific articulable facts from which he could reasonably conclude that Adams's failure to drive as nearly as practical within his lane was unsafe. *See Kendrick*, 2024 WL 924513, at *3 (holding trial court could have determined that defendant's departure from lane was unsafe when officer testified that the relevant roadway had "traffic around the clock because of the nearby neighborhood and apartments," that there was ice and water on the roadway, and that temperatures were cold). In other words, the officer had a reasonable suspicion that Adams had committed a traffic offense, and the trial court did not err by concluding as much, nor by denying Adams's motion to suppress on that basis.

We overrule Adams's sole issue.

## IV. Conclusion

Having overruled Adams's sole issue, we affirm the judgments of conviction. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 5, 2025

8