PD-0693-5

PD-0693-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/8/2015 11:25:08 AM
Accepted 7/9/2015 4:14:04 PM
ABEL ACOSTA
CLERK

IN THE
COURT OF CRIMINAL APPEALS

LISA D. WALL,                    §
    *APPELLANT*          §
V.                               §            NO. PD-0693-15
                                 §
                                 §
THE STATE OF TEXAS,              §
    *APPELLEE*           §

*APPELLANT'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND COURT DISTRICT OF TEXAS IN CAUSE NUMBER 02-13-00552-CR, AFFIRMING THE JUDGMENT OF THE TRIAL COURT IN CAUSE NUMBER CR-2012-01008-D IN COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY, TEXAS; THE HONORABLE JOE BRIDGES, PRESIDING.*

§§§

APPELLANT'S PETITION FOR REVIEW

§§§

JASON ZENDEH DEL
Lead Counsel for Appellant
The Zendeh Del Law Firm
7600 San Jacinto Place, Suite 200
Plano, Texas 75024
Telephone (214) 919-3600
Facsimile (214) 919-3599
Jason@zenlawfirm.com
State Bar Number 24044988

FILED IN
COURT OF CRIMINAL APPEALS

July 9, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

The trial judge was the Honorable Joe Bridges, the presiding judge of County Criminal Court No. 4 of Denton County, Texas.

Appellant is Lisa D. Wall, who was the Defendant in the below trial court case. Appellant was represented at trial and on appeal by Jason Zendeh Del of the Zendeh Del Law Firm. This attorney's address is 7600 San Jacinto Place, Suite 200, Plano, Texas 75024.

The State of Texas, which is represented by Denton County District Attorney Paul Johnson, is also a party to this litigation. At trial, the State was represented by Sarah Wood. On appeal, the State was represented by Catherine Luft. The address of these attorneys is Denton County District Attorney's Office, 1450 E. McKinney Street, Denton, Texas 76209.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ v

STATEMENT REGARDING ORAL ARGUMENT ............................................. 1

STATEMENT OF THE CASE ........................................................................ 2

PROCEDURAL HISTORY AND COURT OF APPEALS' OPINION ................. 3

QUESTION FOR REVIEW .......................................................................... 4

STATEMENT OF FACTS ........................................................................... 5

DISCUSSION ........................................................................................... 6

    I. *The Court of Appeals opinion*…………………………………….....6

    II. *Reasonable suspicion in a motion to suppress*…………………………..6

        Fourth Amendment…………………………………………………...8

    III. *The court of appeals upheld the conviction, and reversed the trial court's judgment, when the evidence did not support the determination that Officer Padgett possessed reasonable suspicion to initiate the traffic stop.*10

CONCLUSION.......................................................................................... 14

PRAYER................................................................................................... 15

CERTIFICATE OF COMPLIANCE............................................................... 16

CERTIFICATE OF SERVICE ................................................................. 16

COURT OF APPEALS' OPINION ...................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Abney v. State*, 394S.W.3d 542 (Tex. Crim. App. 2013)........................................ 7

*Amador v. State*, 275 S.W.3d 872 (Tex. Crim. App. 2009)...................................... 7

*Armendariz v. State*, 123 S.W.3d 401 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S.    974 (2004)........................................................................................ 8

*Brown v. Texas*, 443 U.S. 47 (1979)...................................................................... 9

*Cady v. Dombrowski*, 413 U.S.433 (1973) ........................................................... 10

*Corbin v. State*, 85 S.W.3d 272 (Tex. Crim. App. 2002........................................ 10

*Ford v. State,* 158 S.W.3d 488 (Tex. Crim. App. 2005)...................................... 6, 7

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) ...................................... 7

*State v. Kerwick*, 393 S.W.3d 270 (Tex. Crim. App. 2013) ............................. 11, 13

*State v. Stevens*, 235 S.W.3d 736 (Tex. Crim. App. 2007)...................................... 8

*Terry v. Ohio*, 392 U.S. 1 (1968).............................................................. 8, ,9, 13

*United States v. Brigmont-Ponce*, 422 U.S. 873 (1975)......................................... 8

*Wall v. State*, No. 02-13-00552-CR, 2015 WL 2169307 (Tex. App.—Fort Worth May 7, 2015 ) (memo op.) (not for publication)............................. 3, 6, 10, 11, 14

*Whren v. United States*, 517 U.S. 806 (1996) ........................................................ 8, 9

*Wright v. State*, 7 S.W.3d 148 (Tex. Crim. App. 1999) ............................................. 9

STATUTES

U.S. Cons. Amend. IV ................................................................................ 8

Tex. Cons. Art. 1,§10 ................................................................................ 8

IN THE
COURT OF CRIMINAL APPEALS

LISA D. WALL,           §
    *APPELLANT*         §
V.                  §           NO. PD-0693-15

                          §

THE STATE OF TEXAS,      §
    *APPELLEE*         §

*APPELLANT'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS IN CAUSE NUMBER 02-13-00552-CR, AFFIRMING THE JUDGMENT OF THE TRIAL COURT IN CAUSE NUMBER CR-2012-01008-D IN COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY, TEXAS; THE HONORABLE JOE BRIDGES, PRESIDING.*

STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary to resolve the issues raised by this case.

1

## STATEMENT OF THE CASE

Appellant was convicted of the misdemeanor offense of Driving While Intoxicated ("DWI").  [CR 111]  The trial court sentenced Appellant to 300 days confinement in the Denton County Jail and a $500 fine.  [CR 111]  However, the trial court suspended the imposition of the jail sentence and placed Appellant on fifteen months of community supervision.  [CR 111]

PROCEDURAL HISTORY AND COURT OF APPEALS' OPINION

On appeal, Appellant argued that the trial court abused its discretion by denying Appellant's motion to suppress the evidence obtained during the unlawful stop of Appellant's vehicle. [App. brief at 3]

A panel of judges from the Second District Court of Appeals affirmed the trial court's judgment. *Wall v. State*, No. 02-13-00552-CR, 2015 WL 2169307, at *1 (Tex. App.—Fort Worth, May 7, 2015) (memo op.) (not for publication). In its opinion, however, the appellate court sustained Appellant's issue that the trial court erred when it found in its findings of fact that the officer had reasonable suspicion to stop Appellant on the basis of disregarding a control device or making an overly wide U-turn. *Id.* at *4. The court of appeals went on to determine that the trial court did err when it ruled to deny Appellant's motion to suppress on the basis that the officer had reasonable suspicion that Appellant was engaged in criminal activity. *Id.* at *5. The trial court had made findings of fact, after hearing evidence at the suppression hearing, that Appellant's driving was not reasonable suspicion of DWI. [CR 104] The court of appeals upheld the trial court's judgment under this theory.

## QUESTION FOR REVIEW

Did the court of appeals erroneously review and affirm the trial court's ruling on the motion to suppress? Specifically, did the appellate court improperly uphold the motion to suppress on a theory that the trial court had found did not exist (i.e., that the officer had reasonable suspicion to stop Appellant's vehicle and initiate a temporary detention) in its findings of fact and conclusions of law?

STATEMENT OF FACTS

On December 18, 2011, Appellant was driving her pickup truck[1] in Denton County, Texas. [2 RR 7-9] At approximately 2:00 a.m., Corey Padgett, a police officer with the Denton Police Department, pulled his patrol car behind Appellant's vehicle at the intersection of Fulton and University. [2 RR 7-9] He stated that Appellant was travelling eastbound. [2 RR 10] Officer Padgett testified that the light at the intersection was flashing yellow, which indicated that cars were to proceed with caution through the light. [2 RR 9] He stated that Appellant, however, was completely stopped at the light for a longer than normal period. [2 RR 9, 12]

Officer Padgett then testified that Appellant proceeded through the light and approached a second flashing yellow light at Alice and University. [2 RR 13] There, Appellant slowed down significantly in the middle of the intersection, but she did not completely stop her vehicle. [2 RR 13] He then stated that after proceeding through the intersection, Appellant changed lanes, got into the left-hand lane, and made a U-turn. [2 RR 14] At that point, Officer Padgett turned on his overhead patrol lights and Appellant pulled her vehicle into a Kroger parking lot. [2 RR 25-26]

---

[1] Appellant will refer to her truck as a "vehicle" throughout the brief.

5

## I. *The Court of Appeals' opinion.*

The Fort Worth court of appeals determined that the trial court's finding that the officer did not have reasonable suspicion to stop Appellant's vehicle on the basis of DWI was not supported by the evidence. *Id.* at 5. The appellate court upheld Appellant's conviction under this theory. *Id.* However, the court of appeals agreed with Appellant and went on to state in its opinion that the trial court's findings that Appellant committed traffic offenses (i.e., making an improper U-turn and disregarding a traffic control device) were not supported by evidence. *Wall*, 2015 WL 2169307, at *4.[2]

## II. *Reasonable suspicion in a motion to suppress.*

"To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). When a defendant meets the burden by establishing that the search or seizure occurred without a warrant, the burden shifts to the State to prove that the search or seizure was prompted by reasonable suspicion that an individual

---

[2] Appellant's brief will not focus on this theory because the court of appeals held that the officer did not have reasonable suspicion to stop Appellant's vehicle on the basis of committing a traffic offense. However, Appellant will brief this issue if this Court so requests.

was violating the law. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013); *see also Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).

Here, at the beginning of the suppression hearing, the State stipulated that this case involves a warrantless arrest. [2 RR 7] Therefore, this stipulation shifted the burden to the State to establish the reasonableness of the warrantless detention. *See Ford*, 158 S.W.3d at 492.

A court of appeals reviews a trial court's denial of a motion to suppress under a bifurcated standard of review to evaluate the totality of the circumstances and determine whether reasonable suspicion exists. *See Abney*, 394 S.W.3d at 547; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The court of appeals will give "almost total deference to the trial court's determination of historical facts, especially when the trial court's findings are based on an evaluation of credibility and demeanor." *Abney*, 394 S.W.3d at 547; *see also Guzman*, 955 S.W.2d at 89.

The court of appeals will then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Ford*, 158 S.W.3d at 493. The appellate court must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its

ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**Fourth Amendment**

The United States Constitution protects persons against "unreasonable searches and seizures." U.S. Cons. amend. IV. The United States and Texas Constitutions proclaim that law enforcement personnel may not search an individual absent a warrant based on probable cause. *Id.*; Tex. Cons. art. 1,§10. It has long been the rule, however, that a temporary investigative detention and pat down search for possible weapons or contraband without a warrant is permissible provided the officer has a reasonable belief the individual has been engaged in criminal activity or is armed. *See generally Terry v. Ohio*, 392 U.S. 1 (1968).

A seizure under the Fourth Amendment must be objectively reasonable in light of the particular circumstances of the case. *See id.* at 21-22. Whether a traffic stop is reasonable depends on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law enforcement." *United States v. Brigmont-Ponce*, 422 U.S. 873, 878 (1975). A seizure based on reasonable suspicion or probable cause will generally be

reasonable. *Whren v. United States*, 517 U.S. 806, 818 (1996); *Terry*, 392 U.S. at 21-23.

For an officer to initiate a traffic stop, the officer must have more than a mere hunch. *Whren*, 517 U.S. at 818. The officer must be able to articulate objective facts and circumstances that demonstrate he or she reasonably believed the Defendant was engaged in criminal activity. *See, eg., Brown v. Texas*, 443 U.S. 47, 51 (1979) (to detain, officers must "have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity"); *Terry*, 392 U.S. at 30 (reasonable suspicion exists only where policeman reasonably concludes, inter alia, "that criminal activity may be afoot").

The law does provide, however, that if a police officer objectively has reasonable suspicion or probable cause that an offense has been committed then he or she may reasonably seize an individual through the exercise of his community caretaking function. *Wright v. State*, 7 S.W.3d 148, 151-52 (Tex. Crim. App. 1999). This is the so-called community caretaking function and is the exception to the warrant requirement. *Id.* at 151.

An integral part of a police officer's duty is to "serve and protect." *Id.* As part of this duty, a police officer can approach and assist an individual whom he or she believes is in need of help. *Id.* An officer will act reasonable "when he

stopped the vehicle out of concern for the welfare of the [Defendant]" and not to investigate the Defendant. *Id.*

This doctrine necessarily examines the intent of the officer when he or she invokes the doctrine. Importantly, both the United States Supreme Court and the Court of Criminal Appeals of Texas have held that the "community caretaking function, however, is 'totally divorced from the detention, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *Corbin v. State*, 85 S.W.3d 272, 276-77 (Tex. Crim. App. 2002). That is, a police officer cannot cloak his intent to conduct a criminal investigation, by invoking the community caretaking function. *Corbin*, 85 S.W.3d at 276-77. Thus, an officer's subjective intent is paramount in those cases. *Id.*

*III. The court of appeals upheld the conviction, and reversed the trial court's judgment, when the evidence did not support the determination that Officer Padgett possessed reasonable suspicion to initiate the traffic stop.*

As stated above, the appellate court affirmed Appellant's conviction on the theory that Officer Padgett had reasonable suspicion to stop Appellant's vehicle on the basis of DWI. *Wall*, 2015 WL 2169307, at *5-6. In doing so, the court of appeals reversed the trial court's finding and conclusion that Officer Padgett did not have reasonable suspicion to temporarily detain Appellant on this theory. *Id.*

The trial court made the following relevant findings of fact:

The Court finds the driving of the defendant is not reasonable suspicion of driving while intoxicated. Caution in entering an intersection is proper. The Defendant sat at the intersection for 26 seconds that the [sic] Officer Padgett could observe and that is not obstructing a highway.

But the court finds the defendant could be stopped for disregarding the traffic control device and making a wide turn over the white line. Holt v. State, 724 S.W.2d 914 (Tex. App.-San Antonio 1987). The Court is finding that the Video showing the action is sufficient without the officer testifying that he saw this or was relying on it. [CR 104-05]

The appellate court, however, citing *State v. Kerwick* on the basis that "reasonable suspicion is a mixed question of law that is reviewed de novo on appeal," determined that the trial court's findings were not supported by the record and that Officer Padgett did possess reasonable suspicion to stop Appellant's vehicle on the basis of suspected DWI. 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Wall*, 2015 WL 2169307, at *5. The appellate court based its determination on (1) Appellant's "prolonged stop" at one flashing yellow light, (2) delayed response to brake and subsequently almost complete stop in the middle of the another flashing yellow light intersection, (3) Officer Padgett's testimony that he had made previous DWI stops at a flashing yellow light at the exact location that Appellant's vehicle was travelling, and (4) Officer Padgett's testimony that

Appellant was driving her vehicle at approximately 2:00 a.m. on a weekend in an area that bars are located. *Id.*

At the suppression hearing, Officer Padgett testified as follows:

[State]:     And at what point did you suspect the driver to be intoxicated?

[Officer]:   Upon contact with them and after speaking with them.

[State]:     And what about their driving habits led you to suspect them for DWI?

[Officer]:   I've had DWIs before where somebody stops at a flashing yellow light on University; at that exact area, actually. So stopping at flashing yellow lights is not normal. The time of the day. It's 2:00 a.m. Bars close. It's when most of our DWIs happen.

. . . .

[Appellant]: And on that occasion, and also in your report, you listed two very specific reasons as to why you pulled over Ms. Wall, why you indicated that traffic stop; is that correct?

[Officer]:   Yes.

[Appellant]: And those two very specific reasons are she, one, disregarded a traffic control device; and, two, you wanted to do a welfare check. Is that correct?

[Officer]:   I believe that's in the reason part of the LEADRS, but it also – in the PC narrative, it also states the possible intoxication.

. . . .

[Appellant]: And at a prior hearing, when you testified under oath, we talked about this case and you gave two reasons that you stopped Ms. Wall; disregarding a traffic control device and checking on her welfare. Is that correct?

[Officer]: Yes.

[Appellant]: And as a matter of fact, I specifically asked you, "Were there any other reasons to stop her?" And you stated, "No." Do you recall that?

[Officer]: I believe so.

[Appellant]: Okay. I also asked you precisely when did this incident turn into a DWI investigation. And your response then was only after you made contact with her and you went into your – your clues of intoxication, odor, that type of thing. Do you recall that?

[Officer]: Yes.

[2 RR 15, 17-18]

Here, the record clearly supports the trial court's finding that Appellant's driving was not reasonable suspicion of DWI. [CR 104-05] During his testimony at the suppression hearing, Officer Padgett testified that he did not have reasonable suspicion that Appellant was driving while intoxicated. 2 RR 15, 17-18] Therefore, when the appellate court viewed the evidence in the light most favorable to the trial court's ruling, the court should have affirmed the trial court's finding. *See Kerwick*, 393 S.W.3d at 273.

As stated in *Terry v. Ohio*, reasonable suspicion only exists when a police officer reasonably concludes that "criminal activity may be afoot." 392 U.S. at 30.

Officer Padgett stated under examination from both the State and Appellant that he did not suspect DWI until he stopped Appellant's vehicle and made contact with her. [2 RR 15, 17-18] The officer testified that the only reasons he listed for stopping Appellant's vehicle were (1) disregarding a traffic control device and (2) welfare check. [2 RR 17-18] Only after further examination from the prosecutor did Officer Padgett state Appellant's driving habits led him to suspect DWI. [2 RR 15] Clearly, based on his own testimony, Officer Padgett did not have reasonable suspicion to stop Appellant's vehicle on the basis of DWI. Although the court of appeals pointed out that Officer Padgett testified to the factors that he considered justified his stop of Appellant's vehicle on suspicion of DWI, this testimony came after Officer Padgett stated that he did not suspect DWI until *after* he approached her vehicle. [2 RR 15]

As such, the appellate court erroneously determined that when viewing the evidence in the light most favorable to the trial court's ruling that the trial court's determination that Officer Padgett did not possess reasonable suspicion to stop Appellant's vehicle was not supported by the record. *Wall*, 2015 WL 2169307, at *5.

## CONCLUSION

The Second District Court of Appeals erroneously determined that Officer Padgett had reasonable suspicion to stop Appellant's vehicle on the basis of DWI.

First, after reviewing the evidence, the trial court found that the evidence did not support the reasonable suspicion argument. Second, the evidence presented at the trial court does not support a determination by the appellate court that the officer had reasonable suspicion to temporarily detain Appellant. The trial court's findings of fact are supported by the record and therefore, should be dispositive of the ruling. *See Ford*, 158 S.W. 3rd at 493. This Court should reverse the Fort Worth Court of Appeal's opinion and hold that the trial court's finding that the officer did not have reasonable suspicion to stop Appellant's vehicle on the basis of DWI was correct and supported by the record.

## PRAYER

Appellant prays that her petition be granted and that the Court of Appeals' judgment be reversed in part as it applies to the officer having reasonable suspicion of DWI to stop Appellant's vehicle and render the judgment that the lower court should have rendered (i.e., reversing Appellant's conviction). Alternatively, Appellant prays that the court of appeals' judgment affirming the trial court's judgment be reversed.

Respectfully submitted,

_(signature)_

Jason A. Zendeh Del
Lead Counsel for Appellant
The Zendeh Del Law Firm
7600 San Jacinto Place, Suite 200
Plano, Texas 75024
Telephone (214) 919-3600
Facsimile (214) 919-3599
Jason@zenlawfirm.com
State Bar Number 24044988

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 3,494 words.

_(signature)_

Jason A. Zendeh Del

## CERTIFICATE OF SERVICE

A copy of Appellant's petition for discretionary review has been sent to Denton County District Attorney's Office, Attn: Appellate Division, via fax (940) 349-2601, on the dame date as filing.

_(signature)_

Jason A. Zendeh Del

APPENDIX- COURT OF APPEALS' OPINION

2015 WL 2169307
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

DO NOT PUBLISH TEX. R. APP. P. 47.2(B)
Court of Appeals of Texas,
Fort Worth.

Lisa D. Wall, Appellant
v.
The State of Texas, State

NO. 02–13–00552–CR | DELIVERED: May 7, 2015

FROM COUNTY CRIMINAL COURT NO. 4 OF
DENTON COUNTY, TRIAL COURT NO. CR–2012–
01008–D

**Attorneys and Law Firms**

Jason Zendeh Del, Plano, TX, for Appellant.

Paul Johnson, Dist Atty., Catherine Luft, Asst. Dist. Atty.,
Denton, TX, for State.

PANEL: LIVINGSTON, C.J.; WALKER and GABRIEL,
JJ.

**MEMORANDUM OPINION[1]**

SUE WALKER, JUSTICE

**I. INTRODUCTION[2]**

**\*1** Appellant Lisa D. Wall appeals her conviction for
driving while intoxicated. After the trial court denied her
motion to suppress evidence, Wall pleaded no contest.
The trial court assessed her punishment at 300 days'
confinement, which the court suspended; the trial court
placed Wall on community supervision for fifteen
months. Wall perfected this appeal.

In her sole issue, Wall argues that the trial court erred by
denying her motion to suppress. The State raises a cross-
point, asserting that although the trial court correctly
denied Wall's motion to suppress, the denial was proper
on an alternative ground rejected by the trial court—that
the stop of Wall's vehicle was justified based on the
arresting officer's reasonable suspicion that Wall was
driving while intoxicated. Because we sustain Wall's
issue but also sustain the State's cross-point, we will
affirm the trial court's judgment.

**II. FACTUAL AND PROCEDURAL
BACKGROUND[3]**

Officer Corey Padgett, driving his patrol unit, approached
an intersection where he observed Wall stopped at a
flashing yellow light. Wall remained stopped for several
seconds, and cross-traffic, which had a flashing red light,
drove warily through the intersection when Wall did not.
After a few seconds, Wall drove through the intersection,
and Officer Padgett followed her.

As Wall approached another intersection with a flashing
yellow light, she braked hard but late, coming to an
almost complete stop in the middle of the intersection.
Before her vehicle completely stopped, Wall accelerated
through the intersection, changed lanes, and made a U-
turn. Based on Wall's curious driving behavior, Officer
Padgett initiated a traffic stop.

When Officer Padgett began talking with Wall, he
observed that her eyes were glassy and red, her speech
was slurred, and that she had a slight smell of alcohol.
Officer Padgett administered standard field sobriety tests,
and Wall displayed six clues of intoxication on the
horizontal gaze nystagmus test. Officer Padgett arrested
Wall for driving while intoxicated, and a subsequent
blood draw revealed that Wall had a blood alcohol
concentration of .16.

Wall filed a motion to suppress evidence seized as a result
of Officer Padgett's traffic stop, arguing that Officer
Padgett lacked reasonable suspicion to stop her vehicle.
At the suppression hearing, Officer Padgett testified that
Wall's reaction to the two lights had made him suspect
that she was intoxicated. He explained that stopping at a
flashing yellow light is not normal, even if it is not a
traffic violation to do so. From his training, Officer
Padgett knew that intoxicated drivers often fail to follow
traffic signals, and he considered a driver's inability to
respond properly to a flashing yellow light to be a big
indicator of intoxication. In fact, Officer Padgett had
made prior DWI stops at a flashing yellow light "at that
exact area" of the road that Wall was travelling. Given
Wall's driving behavior and the fact that it was around
2:00 a.m. on a weekend day in a neighborhood with many
bars, Officer Padgett suspected that Wall was intoxicated.

**\*2** The trial court admitted and reviewed a video
recording of the traffic stop. After the hearing, the trial
court denied Wall's suppression motion. In its findings of
fact and conclusions of law, the trial court determined that
Wall's driving did not give rise to reasonable suspicion
that she was driving while intoxicated. But the trial court
concluded that Officer Padgett could have stopped Wall
for either of the two traffic violations that Officer Padgett
had observed: Wall's disregard of a traffic control device

and Wall's U-turn, which the trial court considered too wide because Wall allegedly straddled the turning lane's white line in the turn.

## III. STANDARDS OF REVIEW

### A. MOTION TO SUPPRESS

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App.2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Best v. State,* 118 S.W.3d 857, 861 (Tex.App.–Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex.Crim.App.2007); *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000), *modified on other grounds by State v. Cullen,* 195 S.W.3d 696 (Tex.Crim.App.2006).

Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador,* 221 S.W.3d at 673; *Montanez v. State,* 195 S.W.3d 101, 108–09 (Tex.Crim.App.2006); *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002). Concerning questions of historical fact, even when a video tape of the stop exists, the trial court's factual determinations are entitled to almost total deference so long as they are supported by the record. *See Tucker v. State,* 369 S.W.3d 179, 185 (Tex.Crim.App.2012); *Montanez v. State,* 195 S.W.3d 101, 109 (Tex.Crim.App.2006). Concerning application-of-law-to-fact questions that do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador,* 221 S.W.3d at 673; *Estrada v. State,* 154 S.W.3d 604, 607 (Tex.Crim.App.2005); *Johnson,* 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Tucker,* 369 S.W.3d at 185; *Wiede,* 214 S.W.3d at 24; *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly,* 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens,* 235 S.W.3d 736, 740 (Tex.Crim.App.2007); *Armendariz v. State,* 123 S.W.3d 401, 404 (Tex.Crim.App.2003), *cert. denied,* 541 U.S. 974 (2004).

### B. STATUTORY CONSTRUCTION

Statutory construction is a question of law that we review de novo. *Yazdchi v. State,* 428 S.W.3d 831, 837 (Tex.Crim.App.2014). In construing a statute, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Id.* We look first to the statute's literal text, and we read words and phrases in context and construe them according to the rules of grammar and common usage unless they have acquired technical or particular meaning. *Id.* When statutory language is clear and unambiguous, we give effect to its plain meaning unless to do so would lead to absurd consequences that the legislature could not have possibly intended. *Id.* at 837–38.

### IV. THE TRIAL COURT'S FINDINGS AND CONCLUSIONS

**\*3** The trial court's findings of fact and conclusions of law included the following:

> The Court finds the driving of the defendant is not reasonable suspicion of driving while intoxicated. Caution in entering an intersection is proper. The Defendant sat at the intersection for 26 seconds that the [sic] Officer Padgett could observe and that is not obstructing a highway.

> But the court finds the defendant could be stopped for disregarding the traffic control device and making a wide turn over the white line.

> ....

> The Court therefore denies the motion to suppress.

### V. LAW ON WARRANTLESS DETENTIONS

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S.

19

Const. amend. IV; *Wiede,* 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador,* 221 S.W.3d at 672; *seeYoung v. State,* 283 S.W.3d 854, 872 (Tex.Crim.App.), *cert. denied,*558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador,* 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State,* 182 S.W.3d 899, 902 (Tex.Crim.App.2005); *Ford v. State,* 158 S.W.3d 488, 492 (Tex.Crim.App.2005).

To justify a brief detention for investigative purposes, the officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.' " *Foster v. State,* 326 S.W.3d 609, 613–14 (Tex.Crim.App. 2010) (citing *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883 (1968)). Specifically, the officer must have some minimal level of objective justification for making the stop; when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" on the freedom of the person being detained, an investigative detention is reasonable. *Id.* (citing *Terry,* 392 U.S. at 21); *seeDerichsweiler v. State,* 348 S.W.3d 906, 914 (Tex.Crim.App.2011); *Brother v. State,* 166 S.W.3d 255, 257 (Tex.Crim.App.2005). A brief intrusion is warranted, for instance, where the officer reasonably suspects that the person detained actually is, has been, or soon will be engaged in criminal activity. *Derischweiler,* 348 S.W.3d at 914; *Brother,* 166 S.W.3d at 257. The reasonableness of a given detention turns on the totality of the circumstances, which considers the public and private interests that are at stake. *Brother,* 166 S.W.3d at 259 n.6.

An officer has probable cause to stop and arrest a driver if he observes the driver commit a traffic offense. *State v. Gray,* 158 S.W.3d 465, 469–70 (Tex.Crim.App.2005); *seeState v. Ballman,* 157 S.W.3d 65, 70 (Tex.App.–Fort Worth 2004, pet. ref'd). Relevant here, the transportation code provides: "The operator of a vehicle facing a flashing yellow signal may proceed through an intersection or past the signal only with caution." Tex. Transp. Code Ann. § 544.008(b) (West 2011). Texas law governing U-turns on a divided highway and not at an intersection, as in this case, requires that the turn be made at a location where the dividing physical barrier allows and be made safely and not at the crest of a hill or in the middle of a curve. *See*Tex. Transp. Code Ann. §§ 545.063(b)(1), 545.102, 545.103 (West 2011). Regarding lane compliance, a violation for failure to maintain a single lane requires that a driver's deviation from a lane be made in an unsafe manner. *See*Tex. Transp. Code Ann. § 545.060(a) (West 2011); *Fowler v. State,* 266 S.W.3d

498, 503–04 (Tex.App.–Fort Worth 2008, pet. ref'd) (following cases that interpret the statute as proscribing, not just a movement, but an unsafe movement).

## V. REASONABLE SUSPICION OF DRIVING WHILE INTOXICATED

**\*4** As detailed below, the evidence—viewed in the light most favorable to the trial court's finding that the evidence supported a traffic-offense stop of Wall for disregarding a traffic control device or for making an overly wide U-turn and viewed in the light most favorable to its finding that the evidence did not support a reasonable suspicion that Wall was driving while intoxicated—does not support these findings. *SeeKelly,* 204 S.W.3d at 820–21 (holding evidence viewed in light most favorable to trial court's ruling did not support it). In fact, the video from Officer Padgett's dash cam indisputably negates the trial court's findings that Wall committed the traffic offenses of disregarding a traffic control device and making an overly wide turn over the white line. *SeeTucker,* 369 S.W.3d at 185 ("If the video evidence does not support the trial court's conclusion, then the court of appeals should reverse."); *State v. Houghton,* 384 S.W.3d 441, 446 (Tex.App.–Fort Worth 2012, no pet.) ("We thus give almost total deference to the trial court's factual determinations unless the video recording indisputably contradicts the trial court's findings.").

Looking first to whether Wall's reaction to the flashing yellow light constituted a traffic violation, the transportation code simply states that a driver facing a flashing yellow light "may" proceed with caution. *See*Tex. Transp. Code Ann. § 544.008(b). Nothing in the provision proscribes stopping or excessively decelerating at a flashing yellow light. *See id.* Generally, the term "may" indicates an element of discretion rather than compulsion, which is better communicated with words like "shall." *See, e.g.,Ford v. State,* 305 S.W.3d 530, 539 (Tex.Crim.App.2009) (discussing difference between "may" and "must" or "shall"). For example, in the preceding subsection of the same statute, the transportation code states that a driver facing a flashing red signal "shall" stop. See Tex. Transp. Code Ann. § 544.008(a) (West 2011); *see alsoYazdchi,* 428 S.W.3d at 837 (holding that words are interpreted in context); *Ford,* 305 S.W.3d at 539 (discussing consistent use of the term "may" throughout the article relevant there). Giving the may-proceed-with-caution language of section 544.008(b) its plain meaning, Wall's overreaction to the flashing yellow light, although unusual, did not violate that section. *See*Tex. Transp. Code Ann. § 544.008(b). The evidence, viewed in the light most favorable to the trial court's finding that Wall disregarded a traffic-device, does not support this finding. *SeeYazdchi,* 428 S.W.3d at

837 (holding that statutes are reviewed de novo); *Amador,* 221 S.W.3d at 673 (de novo review of application-of-law-to-fact questions); *Estrada,* 154 S.W.3d at 607 (same); *Johnson,* 68 S.W.3d at 652–53 (same).

Looking next to whether Wall's U-turn constituted a traffic offense, the video does not support the trial court's finding that it did. Although Wall traversed the turning lane's white line while entering the turning lane, she did not re-cross it prior to or during her U-turn. Wall made the U-turn at a proper opening in the barrier and not at the crest of a hill or near a curve. *See* Tex. Transp. Code Ann. §§ 545.063(b)(1); 545.102. No cars were near, and there is no evidence the turn was done in an unsafe manner. *See* Tex. Transp. Code Ann. § 545.103. Thus, even assuming Wall re-crossed the right line or prolonged her transition across it, there is no evidence that the movement was unsafe, and thus it was not a violation. See Tex. Transp. Code Ann. §§ 545.060(a); *Fowler,* 266 S.W.3d at 503–04; *see also* Tex. Transp. Code Ann. § 545.103 (requiring all turns and movements be done safely). Other than the video, there was no evidence of Wall's U-turn, and Officer Padgett did not mention, either in his affidavit or in his testimony, that Wall's U-turn was improperly performed. Thus, again, giving these transportation code sections their plain meaning, no evidence exists in the record that Wall violated them. The evidence, viewed in the light most favorable to the trial court's finding, does not support the trial court's finding that Wall's U-turn constituted a traffic violation. *See* *Yazdchi,* 428 S.W.3d at 837 (statutes reviewed de novo); *Amador,* 221 S.W.3d at 673 (de novo review of application-of-law-to-fact questions); *Estrada,* 154 S.W.3d at 607 (same); *Johnson,* 68 S.W.3d at 652–53 (same); *see also* *Tucker,* 369 S.W.3d at 185 (holding that appellate courts cannot uphold a finding if the video record does not support it); *Houghton,* 384 S.W.3d at 446 (same).

**\*5** Having determined that the traffic-offense findings and conclusions made by the trial court in denying Wall's motion to suppress are not supported by the evidence, we sustain the portion of Wall's issue challenging these findings.

We next address Wall's alternative argument and the State's cross-point. Wall alternatively argues that we cannot affirm the trial court's denial of her motion to suppress on the ground that Officer Padgett possessed reasonable suspicion that Wall was engaged in the criminal activity of DWI because the trial court correctly found and concluded that he did not. The State argues that this finding by the trial court is not supported by the evidence.

Wall's prolonged stop at one flashing-yellow-light intersection and her delayed application of her brakes and quick, almost complete stop in the middle of the next flashing-yellow-light intersection were contextualized by Officer Padgett's testimony that he observed Wall driving at 2:00 a.m. on a weekend in a neighborhood with bars. According to Officer Padgett, intoxicated drivers are often confused by flashing traffic control signals, and he noted that he had made prior DWI stops at a flashing yellow light in "that exact area" of the road that Wall was travelling. Officer Padgett thus articulated something more than an "inchoate and unparticularized suspicion or 'hunch.' " *Foster,* 326 S.W.3d at 613–14. Considering the totality of the circumstances, Officer Padgett possessed "some minimal level of objective justification for making the stop" because he pointed to specific and articulable facts—Wall's peculiar driving through two flashing-yellow-light intersections, the fact that intoxicated drivers are often confused by flashing-light intersections, the fact that Officer Padgett had made other DWI arrests in this very location at the flashing-light intersections, the fact that Wall was driving at 2:00 a.m. on a weekend in a location near bars—which, taken together with rational inferences from those facts, provided reasonable suspicion that Wall was engaged in criminal activity, DWI. *See Id.* (citing *Terry,* 392 U.S. at 15); *see also* *Derichsweiler,* 348 S.W.3d at 914; *Brother,* 166 S.W.3d at 257. The evidence, viewed in the light most favorable to the trial court's finding that Officer Padgett did not possess reasonable suspicion to initiate a temporary detention of Wall, does not support this finding. *See* *State v. Kerwick,* 393 S.W.3d 270, 273 (Tex.Crim.App.2013) ("[R]easonable suspicion is a mixed question of law that is reviewed de novo on appeal."); *Amador,* 221 S.W.3d at 673 (noting de novo review of application-of-law-to-fact questions); *Estrada,* 154 S.W.3d at 607 (same); *Johnson,* 68 S.W.3d at 652–53 (same).

We overrule the portion of Wall's sole issue asserting that we should not affirm the denial of her motion to suppress on the ground that Officer Padgett possessed reasonable suspicion to stop her. We sustain the State's cross-point challenging the trial court's finding and conclusion that Officer Padgett did not possess reasonable suspicion to initiate a temporary detention of Wall. We affirm the trial court's denial of Wall's motion to suppress on this theory. *See* *Stevens,* 235 S.W.3d at 740 (holding that appellate courts may uphold a trial court's judgment under any applicable theory of law supported by the record); *Armendariz,* 123 S.W.3d at 404 (same).

### VI. CONCLUSION

**\*6** Having determined that the trial court's denial of Wall's motion to suppress was proper based on the theory that Officer Padgett possessed reasonable suspicion to initiate a temporary detention of Wall, we affirm the trial court's judgment.

21

**All Citations**

Footnotes

1    *See* Tex. R. App. P. 47.4.

2    This case was originally submitted without oral argument on Friday, May 30, 2014, before a panel consisting of Chief Justice Livingston, Justice Gardner, and Justice Gabriel. The court, on its own motion on January 15, 2015, ordered this case reset without oral argument on February 5, 2015; assigned this case to a new panel, consisting of Chief Justice Livingston, Justice Walker, and Justice Gabriel; and assigned the undersigned to author the opinion.

3    As set forth below, the events leading up to the stop were recorded by Officer Padget's dash cam video recorder; we have reviewed the video.

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.